IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

IN THE MATTER OF A MEMBER
OF THE STATE BAR OF ARIZONA

LISA M. AUBUCHON
ATTORNEY NO. 13141

No. SB-12-0035-AP
Filed September 17, 2013

Appeal of Hearing Panel Opinion and Disciplinary Order from the
Office of the Presiding Disciplinary Judge
No. PDJ20119002

## DISBARMENT ORDERED

COUNSEL:

Lisa M. Aubuchon, In Propria Persona, Tempe

John S. Gleason, Independent Bar Counsel, Alan C. Obye, Independent Bar Counsel, James S. Sudler, Independent Bar Counsel, Office of Attorney Regulation Counsel, Denver, Colorado, for the State Bar of Arizona

JUSTICE TIMMER authored the opinion of the Court, in which VICE CHIEF JUSTICE BALES, JUSTICE PELANDER, JUSTICE BRUTINEL, and JUDGE LAWRENCE F. WINTHROP,* joined.

JUSTICE TIMMER, opinion of the Court:

¶1        Lisa M. Aubuchon appeals from a disciplinary panel's opinion and order disbarring her. The record fully supports the panel's determination that Aubuchon violated several Arizona Rules of Professional Conduct ("ERs"), as set forth in Arizona Supreme Court Rule 42.[1] Without question, Aubuchon failed to fulfill her responsibilities as a

---

[1]        Effective January 1, 2011, Arizona Supreme Court Rule 53, entitled "Grounds for Discipline," was renumbered and amended as Rule 54. Throughout this opinion, we refer to the former version of the rules as

prosecutor, abused the public trust, and misused the justice system. Based on the record and the aggravating and mitigating factors, we order disbarment.

## BACKGROUND

**¶2**        Aubuchon was admitted to the State Bar of Arizona in 1990. She joined the Maricopa County Attorney's Office ("MCAO") in 1996, where she served as a prosecutor until she left in 2010. After Andrew Thomas was elected the Maricopa County Attorney in 2004, he promoted Aubuchon to serve as chief of the pretrial division.

**¶3**        Starting in 2006, the MCAO engaged in well-publicized disputes, lawsuits, investigations, and criminal prosecutions involving various members of the Maricopa County Board of Supervisors (the "Board"), judges serving in the Maricopa County Superior Court ("MCSC"), and others. These disciplinary proceedings primarily concern Aubuchon's roles in several criminal investigations and prosecutions and in a federal civil racketeering ("RICO") lawsuit.

**¶4**        In March 2010, at the request of the State Bar's Executive Director, Chief Justice Rebecca White Berch appointed independent bar counsel to investigate and, as appropriate, prosecute allegations of ethical misconduct against Thomas and other MCAO lawyers. Pursuant to former Rule 54(b)(4), bar counsel submitted a report of the investigation to a probable cause panelist, who subsequently found probable cause for a formal complaint against Thomas, Aubuchon, and Deputy County Attorney Rachel R. Alexander. Bar counsel filed a complaint in February 2011, alleging in twenty-eight charges that Aubuchon violated several ERs and former Rule 53(d) and (f).[2]

---

"former Rule ____" and the current version as "Rule ____." Unless otherwise indicated, we cite to the current version of the Rules.

[2]        The complaint also alleged thirty-three charges against Thomas and six charges against Alexander, which resulted in orders by the hearing panel disbarring Thomas and suspending Alexander. Although Thomas did not appeal, Alexander did, and we ordered her suspension. *In re Alexander*, 232 Ariz. 1, 15 ¶ 66, 300 P.3d 536, 551 (2013).

**¶5**         Because bar counsel filed the complaint after the effective date of new rules governing disciplinary complaints, a three-person hearing panel composed of the presiding disciplinary judge, a lawyer, and a non-lawyer conducted the disciplinary hearing.  Ariz. R. Sup. Ct. 52.  After a twenty-six-day hearing, the panel issued its opinion and order finding that bar counsel had proven almost all charges against Aubuchon. It then disbarred her, and Aubuchon timely appealed.  We have jurisdiction pursuant to Article 3 and Article 6, Sections 1, 5(3), and 5(4) of the Arizona Constitution and Arizona Supreme Court Rule 59(a).

## DISCUSSION

### I.        Non-conforming Briefs

**¶6**         In her briefs filed with this Court, Aubuchon repeatedly violates applicable court rules by failing to develop arguments and support them with "citations to the authorities, statutes and parts of the record relied on."  Ariz. R. Civ. App. P. ("ARCAP") 13(a)(6); *see* Ariz. R. Sup. Ct. 59(g) (requiring all briefs to conform to ARCAP 13).  Although this Court granted Aubuchon's request to double the briefing page limit, she asks us to "thoroughly review the record," cites to lengthy documents without specificity, broadly invites us to review her closing argument for "details of her argument," fails to provide any authority for many contentions, and states she "cannot possibly be expected to refer to four months of testimony to disprove every false finding" in the panel's order.  As we have emphasized:  "We are not required to look for the proverbial 'needle in the haystack'.  We must insist that a bona fide and reasonably intelligent effort to comply with the rules be manifest."  *In re Hesse's Estate*, 65 Ariz. 169, 171, 177 P.2d 217, 218 (1947).  We have done our best to discern and address Aubuchon's arguments, but we consider waived those arguments not supported by adequate explanation, citations to the record, or authority.

### II.       Constitutional Claims

#### A.       Pre-complaint Investigation

**¶7**         Aubuchon contends she was deprived of procedural due process because (1) the State Bar's Executive Director lacked authority to initiate an investigation, (2) Chief Justice Berch wrongly appointed a Colorado attorney not licensed in Arizona to conduct the investigation as

bar counsel, (3) Chief Justice Berch improperly assigned that attorney to investigate attorneys rather than allegations in a bar complaint, (4) bar counsel refused to produce exculpatory evidence found during the investigation, and (5) bar counsel asked Aubuchon to respond to "allegations" rather than evidentiary facts in a letter sent during his investigation. Because disciplinary proceedings are "quasi-criminal in nature[,] . . . the requirements of procedural due process must be met." *In re Brady*, 186 Ariz. 370, 373, 923 P.2d 836, 839 (1996). Aubuchon was afforded due process if she was given fair notice of the charges and a meaningful opportunity to defend against them. *In re Peasley*, 208 Ariz. 27, 34 ¶ 26, 90 P.3d 764, 771 (2004); *Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 558 ¶ 9, 48 P.3d 505, 508 (App. 2002).

**¶8**         We reject Aubuchon's initial three arguments because she fails to show how the alleged pre-complaint actions deprived her of notice or an opportunity to defend the charges. *See In re Peasley*, 208 Ariz. at 34 ¶ 26, 90 P.3d at 771. Aubuchon waived the fourth argument by raising it for the first time on appeal, *see Crowe v. Hickman's Egg Ranch, Inc.*, 202 Ariz. 113, 116 ¶ 16, 41 P.3d 651, 654 (App. 2002), and by failing to substantiate it with citations to the record, ARCAP 13(a)(6).

**¶9**         The fifth argument lacks merit. Bar counsel was required by Supreme Court Rule 55(b) to inform Aubuchon that she was "under investigation," describe "the nature of the allegations," and give her an opportunity to respond. Bar counsel complied with that rule by setting forth factual allegations in a pre-complaint letter to Aubuchon's counsel. Rule 55(b) did not require bar counsel to substantiate the allegations with evidence at that stage.

## B.    Application of New Discipline Rules

**¶10**         Aubuchon argues that applying the new disciplinary rule procedures to the complaint violated the Ex Post Facto Clause of the United States Constitution because the new rules were promulgated after the alleged misconduct. We disagree. The new procedures did not alter the substantive ERs that Aubuchon was charged with violating. Even if we were to hold that the Ex Post Facto Clause applies to disciplinary proceedings, it does not prohibit a change to procedural rights. *See State v. Beltran*, 170 Ariz. 406, 408, 825 P.2d 27, 29 (App. 1992).

¶11        Aubuchon also contends that filing the probable cause petition under the former rules but filing the complaint under the new rules violated her rights to procedural due process and equal protection because she was treated differently than attorneys who proceed through a single, unaltered system. But Aubuchon fails to describe how the changes to the disciplinary system deprived her of notice or an opportunity to defend the charges. And she fails to provide any authority suggesting that such different treatment deprived her of equal protection. Applying the new rules to a complaint filed after their adoption satisfies equal protection because it is rationally related to the state's interest in using a more procedurally efficient process. *See Simat Corp. v. Ariz. Health Care Cost Containment Sys.*, 203 Ariz. 454, 458 ¶ 15, 56 P.3d 28, 32 (2002) (discussing rational relationship standard for cases not involving suspect classes or fundamental rights).

## C.        Informal Request for Recusal

¶12        Aubuchon argues that Presiding Disciplinary Judge William O'Neil deprived her of a fair trial by denying her "informal request" that he "consider" recusal due to his role in criminal cases related to the disciplinary proceedings. We review Judge O'Neil's ruling for an abuse of discretion. *Cf. State v. Schackart*, 190 Ariz. 238, 257, 947 P.2d 315, 334 (1997) (reviewing denial of motion to recuse in criminal case for abuse of discretion).

¶13        A party who seeks to remove the presiding disciplinary judge from a case must file an affidavit demonstrating grounds set forth in A.R.S. § 12-409(B). Ariz. R. Sup. Ct. 51(d). Thereafter, the disciplinary clerk must designate a volunteer attorney member to decide whether cause for removal exists. *Id.* Aubuchon neither filed such an affidavit nor cited § 12-409(B). Instead, she asked Judge O'Neil to consider recusing himself pursuant to Arizona Code of Judicial Conduct Rule 2.11.

¶14        In any event, Aubuchon's informal request lacked merit. We presume that a judge is impartial, and "the party seeking recusal must prove bias or prejudice by a preponderance of the evidence." *State v. Carver*, 160 Ariz. 167, 172, 771 P.2d 1382, 1387 (1989). Bias and prejudice are evidenced by "a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants." *State v. Myers*, 117 Ariz. 79, 86, 570 P.2d 1252, 1259 (1977).

¶15        Before his appointment as the presiding disciplinary judge, Judge O'Neil served as a superior court judge. In that role, he (1) temporarily stayed a criminal prosecution initiated by Aubuchon against MCSC Judge Gary Donahoe, and (2) was assigned to preside over a grand jury investigating Aubuchon. Both matters involved events related to some of the disciplinary charges later filed against Aubuchon. She argues that Judge O'Neil was required to recuse himself pursuant to Arizona Code of Judicial Conduct Rule 2.11(A)(6)(d), which provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: . . . [t]he judge . . . previously presided as a judge over the matter in another court." The "matter" at issue, however, is the disciplinary complaint against Aubuchon and not the criminal charges against Judge Donahoe or the grand jury investigation of Aubuchon.

¶16        Additionally, Aubuchon did not demonstrate that Judge O'Neil's impartiality might reasonably be questioned or that he was biased or prejudiced as a result of his limited roles in the related criminal matters. *See* Ariz. R. Sup. Ct. 81, Code of Judicial Conduct Rule 2.11(A); A.R.S. § 12-409(B)(5) (listing bias or prejudice as a ground for removal). When issuing the temporary stay in the Donahoe prosecution, Judge O'Neil stated that his ruling "doesn't constitute the law of the case or adjudication of any kind at all, and I will be happy to have it either proceed back to me or to not come back to me, either way." He did not recall the grand jury investigation, and the record does not reflect whether Judge O'Neil made any rulings during that assignment. Regardless, a judge is not biased or prejudiced merely because the judge made rulings in the same or related proceedings. *See Liteky v. United States*, 510 U.S. 540, 551 (1994) (holding that a judge is not biased or prejudiced if the judge forms opinions as a result of knowledge obtained in earlier proceedings); *cf. Smith v. Smith*, 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (App. 1977) (deciding that, generally, "the bias and prejudice necessary to disqualify a judge must arise from an extra-judicial source and not from what the judge has done in his participation in the case"). Judge O'Neil did not abuse his discretion by denying Aubuchon's informal request for recusal under Rule 2.11(A)(6)(d).

¶17        Aubuchon also argues that Judge O'Neil exhibited personal bias against her by directing her counsel to accelerate the hearing and using "venomous" language in the opinion and order. We disagree.

Judge O'Neil told counsel for both sides they were moving too slowly; he did not single out Aubuchon. *See Liteky*, 510 U.S. at 555 ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."). And although the panel's subsequent opinion sharply criticizes Aubuchon, it does not reflect "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*; *see also id.* at 555–56 ("[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even . . . judges, sometimes display" do not establish bias or partiality); *Belue v. Leventhal*, 640 F.3d 567, 575 (4th Cir. 2011) ("But to argue that judges must desist from forming strong views about a case is to blink [from] the reality that judicial decisions inescapably require judgment. Dissatisfaction with a judge's views on the merits of a case may present ample grounds for appeal, but it rarely—if ever—presents a basis for recusal.").

**¶18** Finally, Aubuchon argues that Judge O'Neil's personal bias is evidenced by the affidavit of Mark Dixon, which she obtained approximately two weeks after the panel issued its opinion and order. Aubuchon waived this issue by failing to raise it to the panel.[3] *See Crowe*, 202 Ariz. at 116 ¶ 16, 41 P.3d at 654. Regardless, even if we assume the truth of Dixon's allegations, the affidavit does not overcome the presumption that Judge O'Neil acted without bias or prejudice.

**¶19** Dixon, a self-described friend and neighbor of Judge O'Neil's, avowed that while the two repaired a home fence in 2009, Judge O'Neil said he was angry that MCAO was "criticizing" and "investigating" his "friend," Judge Donahoe. Judge O'Neil's purported expression of anger made privately to a friend approximately two years before bar counsel filed the complaint does not prove personal bias. *See In re Guardianship of Styer*, 24 Ariz. App. 148, 151, 536 P.2d 717, 720 (1975) ("The fact that a judge may have an opinion as to the merits of the cause or a strong feeling about the type of litigation involved, does not make the judge biased or prejudiced."); *cf.* Ariz. R. Sup. Ct. 81, Code of Judicial

---

[3] Aubuchon contends she could not have produced the affidavit to the panel because she learned of Dixon's evidence only after the opinion and order were issued. But Arizona Rule of Civil Procedure 60(c) applies to disciplinary proceedings. Ariz. R. Sup. Ct. 48(b). Aubuchon could have invoked that rule to move for relief based on Dixon's affidavit.

Conduct Rule 2.11(A)(5) (requiring a judge to disqualify himself or herself if the judge has made a public statement that "commits or appears to commit the judge to reach a particular result or rule in a particular way").

### D.    Failure to Allow Character Witnesses

**¶20**    Judge O'Neil limited Aubuchon to seven character witnesses from her pre-hearing list of sixty-four but stated he might permit additional witnesses if justified. Aubuchon challenges that ruling but offers no authority or explanation and fails to describe the content of the precluded testimony. She has not established any error. Permitting testimony of an additional fifty-seven people on the same topic would have been needlessly cumulative. Ariz. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence.").

### III.    Professional Misconduct

**¶21**    Aubuchon argues that the panel misapplied the ERs and made unsupported factual findings. We review questions of law de novo, Ariz. R. Sup. Ct. 59(*l*); *In re Johnson*, 231 Ariz. 556, 557 ¶ 1, 298 P.3d 904, 905 (2013), but accept the panel's factual findings unless they are clearly erroneous, *In re Alexander*, 232 Ariz. 1, 5 ¶ 11, 300 P.3d 536, 540 (2013). Also, we view the evidence and all reasonable inferences in the light most favorable to sustaining the panel's findings. *See State v. Boyston*, 231 Ariz. 539, 551 ¶ 60, 298 P.3d 887, 899 (2013).

**¶22**    The hearing panel found that Aubuchon violated multiple ERs in handling several assignments from Thomas and violated supreme court rules by failing to cooperate and furnish information during the disciplinary screening investigation. Because we consider the most serious misconduct when determining suitable disciplinary sanctions, *see In re Alexander*, 232 Ariz. at 13 ¶ 50, 300 P.3d at 548, we focus our discussion on Aubuchon's arguments that the panel erred in finding she violated ER 3.8(a) by "prosecuting a charge that the prosecutor knows is not supported by probable cause" (charge twenty-four), and ER 8.4(d) by "engag[ing] in conduct that is prejudicial to the administration of justice" (charges eight, nine, twenty, and thirty). *See infra* ¶¶ 50, 58.

### A. First Prosecution of Stapley

¶23      In November 2008, Aubuchon obtained an indictment charging Board Chairman Don Stapley with 118 criminal violations relating to his public financial disclosures dating back to 1994 ("*Stapley I*"). After the case was assigned to retired Judge Kenneth Fields, Aubuchon unsuccessfully moved for his recusal and sought to interview him and other judges to support her motion. Judge Fields eventually dismissed fifty-one misdemeanor charges because they lacked merit. In the subsequent appeal, the state, through different counsel, conceded that forty-four of the misdemeanor charges were barred by the statute of limitations.

¶24      The panel found that Aubuchon prejudiced the administration of justice in violation of ER 8.4(d) by (1) obtaining an indictment for the forty-four misdemeanor counts knowing the statute of limitations had run and (2) seeking to interview the judges.

### 1. Statute of Limitations

¶25      The state must prosecute a misdemeanor within one year after it discovers probable cause for the violation or, in the exercise of reasonable diligence, should have discovered it. A.R.S. § 13-107(B)(2); *State v. Jackson*, 208 Ariz. 56, 64–65 ¶ 30, 90 P.3d 793, 801–02 (App. 2004). The panel found that Aubuchon knew no later than May 14, 2008, that the one-year limitation period had commenced running approximately one year earlier.

¶26      Aubuchon briefly contends the panel erred because the trial court did not rule in *Stapley I* that the statute of limitations had run. Whether Aubuchon knew the limitations period had run does not depend on a court ruling that the claims were barred. In any event, such a determination was unnecessary in light of the state's later concession that the limitations period had run on these charges.

¶27      Aubuchon also argues that no evidence shows she knew the statute of limitations had expired when she sought the indictment in November 2008. But ER 8.4(d) requires only a negligent mental state. *In re Alexander*, 232 Ariz. at 11 ¶ 40, 300 P.3d at 546. Moreover, the record supports the panel's determination that she in fact knew the limitations period had run.

¶28 In January 2007, Thomas directed Special Assistant County Attorney Mark Goldman to investigate whether Stapley had financial dealings with an attorney. Goldman did not find a connection but discovered "some sort of violation" in at least one of Stapley's public financial disclosures and irregularities in others. He reported his findings in May to Thomas, who acknowledged at the hearing that the statute of limitations had started to run for the purported violation. At Thomas's direction, Goldman presented his findings to the Maricopa Anti-Corruption Enforcement ("MACE") unit, which MCAO and the Maricopa County Sheriff's Office ("MCSO") jointly operated, and where the matter languished.

¶29 In March 2008, Thomas assigned the investigation to Aubuchon and told her to determine within thirty days whether charges could be filed. Aubuchon met briefly with Goldman to obtain the research he had presented to MACE but did not discuss the investigation with him. She also obtained MCAO Chief Assistant Sally Wells's MACE documents, which included Goldman's research. Aubuchon noticed that some of the internet-generated copies of Stapley's financial disclosures contained timestamps reflecting that Goldman had obtained them in January and February 2007.

¶30 Aubuchon investigated further and presented her results and a draft indictment to MACE on May 14, 2008. The indictment was dated May 29, and Aubuchon stated they would have to move quickly. MACE team members expressed concern that they had been given a draft indictment before they had investigated or written a report. According to a MACE officer, when Aubuchon was asked whether she had made herself a witness by investigating the matter, she responded "something to the effect of well, that's why you're going to recreate the books or redo what we've already done." When a MCSO lieutenant noted the age of many disclosures and asked about the statute of limitations, Aubuchon inaccurately told him that the limitations periods for any misdemeanor charges started to run that day because that was when law enforcement learned of the matter. Based on this representation, MCSO reported the investigation as commencing May 14, 2008. When presenting the case to the grand jury in November, Aubuchon did not present any evidence regarding the age of the investigation or mention the statute of limitations.

¶31 This evidence permitted the panel to conclude that Aubuchon knew that the state had either discovered probable cause to

charge the misdemeanors, or should have discovered it in the exercise of reasonable diligence, more than one year before November 2008. First, Aubuchon was aware of the age of the investigation, as evidenced by the early 2007 dates on Goldman's documents and MACE's involvement in 2007. Second, Thomas's knowledge that the limitations period had started to run on at least one charge and his direction for quick work supported an inference that he told Aubuchon about the limitations period. This conclusion is bolstered by Aubuchon's presentation at the May 14 MACE meeting of a draft indictment dated two weeks later and her statement that they needed to proceed quickly. Third, and finally, Aubuchon's efforts to describe the starting date of the investigation as May 14, 2008, despite her having already completed an investigation sufficient to permit her to draft an indictment, shows her knowledge that at least some charges could have been barred by the statute of limitations. The panel did not err by finding that Aubuchon violated ER 8.4(d) in handling *Stapley I*.

## 2.    Requests to Interview Judges

¶32        MCSC Presiding Judge Barbara Mundell assigned Judge Fields to *Stapley I*. Aubuchon asked Judge Fields to voluntarily recuse himself and, if he refused, moved for his recusal pursuant to Arizona Rule of Criminal Procedure 10.1(a), which requires "a change of judge if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge." After Judge Fields refused to voluntarily recuse himself, Aubuchon wrote to Judge Mundell, Judge Anna Baca, who presided over MCSC's criminal division, and Judge Fields, stating that his appointment was outside "the normal criminal case assignment process" and asking to interview them in preparation for a possible hearing on the Rule 10.1 motion. She also asked to interview Judge Fields about his "ability to fairly and impartially preside over this matter." The judges either ignored or declined these requests. Aubuchon then filed a motion to interview or depose the judges, which Judge Baca denied. Judge Baca then denied the Rule 10.1 motion without prejudice because Aubuchon had failed to comply with the rule. Aubuchon renewed her motion, but before the court could hold a hearing, MCAO was disqualified as counsel due to a conflict of interest, and the motion became moot.

¶33        The panel found that Aubuchon prejudiced the administration of justice by seeking to ascertain the judges' thought processes and intimidate them. Aubuchon asserts that her request was

11

permissible because she did not seek to question the judges about a judicial ruling; she only sought to question them about an administrative assignment.

**¶34**        The record supports the panel's determination. First, it is improper to probe the mental processes engaged in by judges in making decisions because doing so "would be destructive of judicial responsibility." *United States v. Morgan*, 313 U.S. 409, 422 (1941). Aubuchon cites no authority supporting her contention that parties may question judges about decisions not involving the merits of a case, and other courts have not made this distinction. *See, e.g.*, *In re Sanai*, 225 P.3d 203, 208–09 ¶ 24 (Wash. 2009) ("Judges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed.") (citation omitted); *State ex rel. Kaufman v. Zakaib*, 535 S.E.2d 727, 735 (W. Va. 2000) ("[J]udicial officers may not be compelled to testify concerning their mental processes employed in formulating official judgments or the reasons that motivated them in their official acts."). Compelling a judge to explain the reasons for administrative or procedural decisions relating to cases could undermine judicial responsibility in a similar manner as asking about merits rulings and is therefore improper. Aubuchon's requests to interview the judges about the reasons for Judge Fields's assignment were improper because she sought to probe Judge Mundell's mental processes in making a decision in performance of her duties as the presiding judge. Moreover, Aubuchon's requests to question Judge Fields about his ability to rule without bias effectively sought to discover his reasons for refusing her request to voluntarily recuse himself, and was therefore improper.

**¶35**        Second, the panel was justified in concluding that Aubuchon's improper requests prejudiced the administration of justice because they appeared designed to pressure the court to assign *Stapley I* to another judge. Aubuchon's inquiries about Judge Fields's assignment seemingly did not relate to whether he could conduct a fair and impartial hearing. *See* Ariz. R. Crim. P. 10.1(a). The panel reasonably inferred that the real purpose of the requests was to compel the court to reassign the case as a way to avert a Rule 10.1 hearing.

**¶36**        The panel did not err by finding that Aubuchon violated ER 8.4(d) by repeatedly requesting to interview or depose the judges.

## B. Civil RICO Lawsuit

¶37 On December 1, 2009, Aubuchon filed a RICO lawsuit on behalf of Thomas and Maricopa County Sheriff Joseph Arpaio against the Board, its members, four MCSC judges, and others. She alleged that the defendants committed bribery and extortion as part of a conspiracy "to hinder the investigation and prosecution of elected officials, county employees, and their attorneys concerning the funding and construction of a court tower in Maricopa County." *In re Alexander*, 232 Ariz. at 4 ¶ 5, 300 P.3d at 539. Because Aubuchon had a potential conflict of interest, Thomas re-assigned the lawsuit to Alexander a few days later. The plaintiffs later voluntarily dismissed the case.

¶38 The panel found that Aubuchon prejudiced the interests of justice in violation of ER 8.4(d) by filing the complaint against judges who were absolutely immune from a civil damages lawsuit based on their judicial acts. According to the panel, Aubuchon, along with Thomas and Alexander, "pursued the RICO action to retaliate against the named judges and to intimidate the judges of the Superior Court."

¶39 Like Alexander, Aubuchon argues that the panel erred because no evidence shows she intended to retaliate against or intimidate judges, and the judges were not immune from suit because they acted in non-judicial capacities. For the reasons explained in *In re Alexander*, 232 Ariz. at 11 ¶¶ 39–42, 300 P.3d at 546, we reject these arguments. Aubuchon violated ER 8.4(d) by filing the RICO lawsuit against the judges.

## C. Prosecution of Judge Donahoe

¶40 Upon Judge Baca's retirement in January 2009, Judge Donahoe was named as the presiding judge for the MCSC's criminal division. In that role, he made rulings adverse to MCAO and MCSO and allegedly acted unprofessionally towards MCSO officers. As a result, MCSO Chief Deputy David Hendershott filed a judicial conduct complaint against Judge Donahoe on November 30, 2009, and Aubuchon filed the civil RICO complaint the following day against Judge Donahoe and others.

¶41 About the same time, Judge Donahoe scheduled a December 9 afternoon hearing on various motions concerning MCAO's authority to

appoint independent special deputy county attorneys to pursue a grand jury investigation of alleged acts of county corruption. On the morning of the scheduled hearing, Aubuchon filed a criminal complaint against Judge Donahoe charging him with hindering prosecution, obstructing criminal investigation, and bribing a public servant. She then moved for the judge to recuse himself from grand jury matters in light of the pending charges, Hendershott's judicial conduct complaint, and the RICO lawsuit. After Judge Donahoe was served with the complaint, he vacated the afternoon hearing and recused himself. The court dismissed the criminal complaint against Judge Donahoe in March 2010.

¶42　　　　The panel found that Aubuchon violated her responsibility as a prosecutor in violation of ER 3.8(a) and prejudiced the administration of justice in violation of ER 8.4(d) by knowingly filing the criminal complaint without probable cause and for the purposes of avoiding the December 9 hearing and compelling Judge Donahoe's recusal. Aubuchon does not contest the panel's finding that she filed the complaint to compel Judge Donahoe to vacate the December 9 hearing and recuse himself from grand jury matters, and we therefore accept that finding. Rather, she argues that the complaint was supported by probable cause, and imposing discipline for filing it therefore improperly infringes on the authority of the executive branch to make charging decisions. She alternately argues that the panel erred by finding a violation of ER 3.8(a) because she did not know when she filed the complaint that probable cause was lacking.

¶43　　　　Sufficient evidence shows that the criminal complaint was not supported by probable cause. First, the probable cause statement filed with the complaint did not support the charges. The allegations criticize how Judge Donahoe performed his judicial duties, but nothing links his actions to the elements of the charged crimes.[4] Specifically, none of the allegations would lead a reasonable person to believe the complaint's

---

[4]　　　　Aubuchon asserted that Judge Donahoe (1) failed to disclose an attorney-client relationship with attorneys appearing before him on a grand jury investigation, (2) refused to hold Stapley in contempt for disclosing grand jury information to his attorney, (3) improperly presided over motions in *Stapley I*, (4) threatened to bypass MCSO by encouraging criminal defense attorneys to move to release in-custody clients and then tell the media that MCSO was to blame for failing to adequately perform its transportation duties, (5) exhibited bias against MCSO by his rulings, and (6) scheduled the December 9 hearing.

charge that Judge Donahoe (1) "provid[ed] [others] with money, transportation, weapon[s], disguise[s], or other means of avoiding discovery, apprehension, prosecution, or conviction" (hindering prosecution), (2) obstructed a criminal investigation "by means of bribery, misrepresentation, intimidation, force, or threats of force" (obstruction of criminal investigation), or (3) "solicited, accepted, or agreed to accept a benefit" in exchange for influencing his judgment (bribery). *Cf. State v. Dixon*, 153 Ariz. 151, 153, 735 P.2d 761, 763 (1987) (holding that probable cause to arrest exists if the arresting officer possesses "reasonably trustworthy information sufficient to lead a reasonable person to believe that an offense has been committed and that the person to be arrested committed it").

¶44        Second, the rushed circumstances surrounding the filing of the complaint highlight the lack of probable cause. Thomas directed Aubuchon to file the complaint the day before she did so, and neither MCAO nor MCSO investigators had conducted an investigation. Regardless, Aubuchon asked MCSO officers to immediately prepare a departmental report and probable cause statement. At Aubuchon's direction, Hendershott directed an officer to use the judicial conduct complaint as the basis for the probable cause statement. Aubuchon told officers they "would have time to put the case together" after the complaint was filed.

¶45        Third, others did not believe the complaint was supported by probable cause. Several MCAO lawyers and MCSO officers read the complaint, concluded it was unsupported by the probable cause statement, and refused to sign or file it. Yavapai County Attorney Sheila Polk testified that even if the allegations in the probable cause statement were true, they did not constitute probable cause.

¶46        Aubuchon argues that because Thomas, Arpaio, and Hendershott believed probable cause existed, and MCAO Detective Timothy Cooning testified he would have signed the complaint had he known "things" in the complaint were true, the panel erred by finding that no probable cause existed. We disagree. The subjective opinions expressed by these interested individuals do not overcome the above-described evidence showing a lack of probable cause.[5]

---

[5]        Contrary to Aubuchon's assertion, only Thomas and Hendershott testified that probable cause supported the complaint. The record does

¶47 The record also supports the panel's finding that Aubuchon knew the complaint lacked probable cause. Her knowledge can be inferred from the circumstances. *See In re Alexander*, 232 Ariz. at 5 ¶ 13, 300 P.3d at 540 ("A lawyer's motives and knowledge can be inferred from the frivolousness of a claim."). She was an experienced prosecutor who had supervised charging decisions for five years at the time she filed the complaint. Although she undoubtedly knew how to support a complaint with an adequate probable cause statement, she blatantly failed to do so. *See supra* ¶ 43. And she ignored the concerns of members of her own office and MCSO officers about the complaint, stating they "would have time to put the case together" later. *See supra* ¶¶ 44–45. The panel reasonably found that an experienced prosecutor like Aubuchon knew that the complaint was not supported by probable cause.

¶48 Throughout these proceedings, Aubuchon has steadfastly maintained that Judge Donahoe's conduct evidenced criminal wrongdoing. She might have subjectively suspected as much and hoped to discover confirming evidence before the court ruled on probable cause. But Aubuchon's responsibility as a prosecutor was to ensure probable cause existed when she filed the charges. This she did not do, thereby justifying the panel finding a violation of ER 3.8(a).

¶49 In sum, Aubuchon violated ERs 3.8(a) and 8.4(d) by filing the criminal complaint against Judge Donahoe without probable cause in order to compel him to recuse himself from grand jury matters.

### D.    Remaining Violations

¶50 Aubuchon's violations of ERs 3.8(a) and 8.4(d), standing alone, justify the sanction of disbarment. Consequently, even if Aubuchon's arguments challenging the panel's findings of other violations have merit, because our assessment of an appropriate disciplinary sanction would not change, we need not address them in detail. But because those other findings would be relevant to any future application by Aubuchon for reinstatement to the State Bar, *see* Ariz. R. Sup. Ct. 64, 65, we address them summarily.

---

not reflect that Arpaio testified about probable cause, and Aubuchon does not cite any evidence of his opinion on the matter. And Cooning's testimony does not support Aubuchon as he testified that "[a]fter reading the probable cause statement it wasn't clear to me what the crimes were."

**¶51**       We reject the panel's determination that Aubuchon committed professional misconduct by violating the following ERs:

- ER 1.7(a)(2) (charges five, eighteen, and twenty-nine):[6] The record does not contain clear and convincing evidence that Aubuchon's personal interests materially limited her representation in the matters underlying these charges. And Thomas's personal interests were not properly imputed to Aubuchon pursuant to ER 1.10(a). *See In re Alexander*, 232 Ariz. at 10 ¶ 35, 300 P.3d at 545 (describing when a conflict of interest based on another's personal interests can be imputed).

- ER 3.3(a) (charge seven): The evidence does not clearly and convincingly show that Aubuchon knowingly made a false statement in her motion to recuse by describing Judge Fields as "the complainant in an open and pending State Bar matter that he initiated against . . . Thomas." Although Judge Fields did not directly complain about Thomas, he sent the State Bar material that prompted an investigation, and the State Bar considered Judge Fields the complainant. Aubuchon's language, although imprecise, does not reflect an attempt to knowingly mislead the court.

- ER 8.4(b) (charge twenty-seven): Aubuchon did not compel a MCSO detective to commit perjury by asking him to sign under oath the criminal complaint filed against Judge Donahoe. The record does not reflect that the detective gave a false sworn statement "believing it to be false." A.R.S. § 13-2702(A)(1) (defining perjury). He signed the complaint on "information and belief," and no evidence shows he believed the allegations were false.

- ER 8.4(b) (charge twenty-eight): Although the record supports a finding that Aubuchon agreed to file the criminal and civil cases against Judge Donahoe to compel his recusal from *Stapley I*, these acts did not constitute a conspiracy to prevent him from enjoying a right or privilege secured by the Constitution in violation of 18 U.S.C. § 241. Judge Donahoe's recusal did not deprive him of his right to expression or impair his employment as a judge. *See Nevada Comm'n on Ethics v. Carrigan*, 131 S. Ct. 2343, 2349 (2011) ("[T]here do not appear to have been any serious challenges to judicial recusal statutes as having unconstitutionally restricted judges' First Amendment rights."); *Conn v.*

---

[6]       We agree with the panel that Aubuchon violated ER 1.7(a)(1), which also underlies charge eighteen.

17

*Gabbert*, 526 U.S. 286, 291–92 (1999) (noting that cases recognizing a liberty interest to engage in an occupation "deal with a complete prohibition of the right to engage in a calling" and not merely a "brief interruption").

- ER 8.4(c) (charge thirty-two): There is no clear and convincing evidence that Aubuchon knowingly misrepresented the status of a grand jury inquiry to a special prosecutor by failing to relate that the grand jury had voted to "end the inquiry." *See In re Owens*, 182 Ariz. 121, 125, 893 P.2d 1284, 1288 (1995) (holding that ER 8.4(c) requires "knowing" misconduct). Whether the grand jury ended the inquiry due to a lack of evidence would not have precluded the special prosecutor from resubmitting charges to a future grand jury. *State v. Young*, 149 Ariz. 580, 585, 720 P.2d 965, 970 (1986) ("[A]bsent prohibition by statute or rule, the prosecutor can resubmit a case before the grand jury after the same charge has been dismissed or a 'no bill' returned."). And the circumstances surrounding the vote suggest the grand jury might have complied with Aubuchon's request that it release the case for assignment to a special prosecutor.

¶52 We reject Aubuchon's arguments that the panel incorrectly found that she committed professional misconduct as set forth in the remaining charges not explicitly addressed in this opinion.

### IV. Sanction Imposed

¶53 Aubuchon alternately argues that disbarment is not warranted because Judge O'Neil excluded pertinent mitigation evidence and the panel failed to give appropriate weight to presented mitigation. We review the imposed sanction de novo as a matter of law. *In re Alexander*, 232 Ariz. at 13 ¶ 48, 300 P.3d at 548.

¶54 The panel appropriately followed the standards set forth in the American Bar Association's *Standards for Imposing Lawyer Sanctions* for determining an appropriate disciplinary sanction. Ariz. R. Sup. Ct. 58(k); *see In re Alexander*, 232 Ariz. at 13 ¶¶ 49–50, 300 P.3d at 548 (describing the process for deciding sanctions). In doing so, the panel identified disbarment as the presumptive sanction. After finding six aggravating factors and one mitigating factor, the panel decided that the presumptive sanction of disbarment applies.

¶55        Aubuchon does not challenge the panel's determination that disbarment is the presumptive sanction or its finding of six aggravating factors.  Instead, she argues that the panel did not give appropriate weight to mitigation evidence because Judge O'Neil prevented her from presenting all listed character witnesses, the panel ignored the mitigation evidence presented, she had never had a prior disciplinary complaint proceed past the screening stage, and these proceedings were not initiated by a bar complaint.

¶56        For the reasons previously explained regarding Judge O'Neil's ruling on the number of character witnesses permitted, we reject Aubuchon's argument on that point.  *See supra* ¶ 20.

¶57        We also reject Aubuchon's remaining arguments.  The panel found that Aubuchon's lack of a prior disciplinary record was a mitigating circumstance, so her argument that the panel failed to credit this fact is baseless.  And although witnesses testified to Aubuchon's good character, the panel was justified in not finding this a mitigating circumstance in light of evidence regarding the events underlying these proceedings, which reflected poorly on her character.   Finally, the manner in which the disciplinary proceedings were initiated has no bearing on whether the presumptive sanction of disbarment is appropriate.

¶58        Aubuchon's most serious misconduct was filing a criminal complaint against Judge Donahoe in violation of ER 3.8(a) and engaging in conduct prejudicial to the administration of justice in violation of ER 8.4(d).  Although the panel properly found that Aubuchon also violated several other ERs, we consider those particular violations the most egregious in light of the public trust placed in prosecutors to wield their considerable power fairly and for the public good.  After considering Aubuchon's mental state when engaging in the misconduct, the potential and actual injuries suffered, and the aggravating and mitigating circumstances, we are compelled to impose the presumptive sanction.

¶59        We order Aubuchon disbarred.


* Chief Justice Rebecca White Berch recused herself from this case. Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Lawrence F. Winthrop, Judge of the Court of Appeals, Division One, was designated to sit in this matter.