NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO N.Y.

No. 1 CA-JV 23-0132

FILED 05-07-2024

---

Appeal from the Superior Court in La Paz County
No. S1500JD202000008
The Honorable Marcus A. Kelley, Judge

**AFFIRMED**

---

COUNSEL

Juliette F., Riverside, CA
*Appellant*

The Brewer Law Office, Show Low
By Benjamin M. Brewer
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee DCS*

Fred H. Welch PLLC, Laveen
By Fred H. Welch
*Counsel for Appellee Child*

_____

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge James B. Morse Jr. joined.

_____

**C A T L E T T**, Judge:

**¶1**        Juliette F. ("Mother") appeals the juvenile court's termination of her parental rights as to N.Y. ("Child").  Because the record sufficiently satisfies the statutory requirements for termination of Mother's parental rights, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        Mother has four children, including Child, who was born in May 2013.  In March 2020, Mother brought Child's younger sibling to Arizona during a supervised visit in California.  While California Child Welfare Protection investigated that incident, the Department of Child Safety ("DCS") and police in Arizona attempted to conduct a welfare check on Mother's children in Arizona, but she barricaded the doors and refused to allow officers into her apartment, even after they obtained a search warrant.  Police forcefully entered and arrested Mother for kidnapping and resisting arrest.  DCS took all four children into protective custody.

**¶3**        The following month, DCS filed a petition alleging Child was dependent as to Mother.  The juvenile court found Child dependent because Mother could not provide parental care or control because she neglected to treat her mental health issues.

**¶4**        DCS offered reunification services to Mother, including supervised visitation, mental-health services, substance-abuse services, and a psychological evaluation.    Mother underwent the psychological evaluation and participated inconsistently in supervised visitation. Mother's behavior during visitation was erratic—she violated visitation guidelines; talked to Child about the case; made claims in front of Child about DCS kidnapping, sex trafficking, and abusing Child; and attempted to get information from Child.  DCS eventually banned her from its facility because she acted "erratically" and caused DCS staff to be concerned for their safety.

¶5         The doctor who conducted Mother's psychological evaluation diagnosed her with a delusional disorder (persecutory type) and an unspecified personality disorder. The doctor concluded Mother's delusions exacerbate her aggressive behavior, distort her reality, and impact her parenting abilities. The doctor also noted that Mother's paranoia and state of "hypervigilance" could impact Child's mental health.

¶6         In January 2023, DCS moved to terminate Mother's parental rights. By that time, Mother had been convicted of felony aggravated assault and felony custodial interference and sentenced to prison for violating probation. She had also been convicted of vehicle theft, and she had a case pending against her for failure to obey a court order. She also had open arrest warrants in Arizona.

¶7         At the termination hearing, a DCS case manager testified that Child had been in out-of-home placement more than fifteen months, and that Mother's untreated mental health issues and criminal activity caused the out-of-home placement. The case manager testified that Mother was unable to overcome the conditions that caused Child to be in out-of-home placement. The case manager believed that termination and adoption were in Child's best interests because DCS had identified an adoptive home with a relative who would meet Child's needs.

¶8         Mother asserted at the hearing that DCS "kidnapped" her children as part of "a big system coverup." She further denied having any mental health issues except anxiety and an "adjustment disorder" and claimed she did not need treatment.

¶9         The juvenile court terminated Mother's parental rights under the mental-illness, nine-month, and fifteen-month grounds. *See* A.R.S. §§ 8-533(B)(3), (B)(8)(a), and (B)(8)(c). The court found DCS sufficiently proved that Child had been in an out-of-home placement for more than nine months and that Mother had "substantially neglected or willfully refused to remedy the circumstances" causing the out-of-home placement. The court also found that DCS sufficiently proved that Child had been in an out-of-home placement for more than fifteen months and that Mother could not remedy the circumstances causing that out-of-home placement. The court found that there was a substantial likelihood that Mother "will not be capable of exercising proper and effective parental care and control" over Child in the near future. And the court found that DCS sufficiently proved that Mother could not discharge parental responsibilities because of mental illness and there were "reasonable grounds to believe that the condition will continue for a prolonged, indeterminate period."

¶10 Finally, the court found DCS sufficiently established that termination would serve Child's best interests because it would "further the plan of adoption by his current relative placement and provide him with safety, stability, and permanency, and prevent him from being subjected to further abuse and/or neglect in the future."

¶11 Mother timely filed a notice of appeal. We have jurisdiction. *See* A.R.S. § 8-235(A).

## DISCUSSION

¶12 After filing the notice of appeal, Mother's counsel notified this court that he had reviewed the entire record on appeal and had not found any non-frivolous issues to raise. He added that he could not locate Mother to inform her that she could file a *pro se* brief challenging termination. This court, therefore, dismissed the appeal. Mother's counsel later moved to vacate the dismissal after Mother contacted him from prison and indicated she would like to file a *pro se* brief. This court, over DCS's objection, vacated the dismissal, reopened the appeal, and allowed Mother to file an opening brief.

¶13 In her *pro se* brief, Mother argues the juvenile court erred in terminating her parental rights. To terminate a parent's rights, the superior court must find by clear and convincing evidence that at least one of the grounds in A.R.S. § 8-533(B) exists and must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). This Court "will affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022). We will not disturb the juvenile court's conclusions for insufficient evidence unless no one could reasonably find the evidence to be sufficient. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, ___ ¶ 31 (2023).

¶14 Mother asserts that this case has been "manipulated" and requests a new trial. She also asks for additional time to file another opening brief, alleging her requests for record materials (*e.g.*, transcripts and therapy records) might have been untimely because the "female guards [in prison] have threatened and admitted to throwing [her] mail away."

¶15 Mother's opening brief does not comply with our procedural rules; it is not supported by adequate explanation, citations to the record, or authority. *See* Ariz. R. Civ. App. P. 13(a); Ariz. R.P. Juv. Ct. 607(b). Mother has, therefore, waived any argument on appeal relating to the

termination of her parental rights. *See In re Aubuchon*, 233 Ariz. 62, 64–65 ¶ 6 (2013); *J.W. v. Dep't of Child Safety*, 252 Ariz. 184, 188 ¶ 11 (App. 2021); *see also Ramos v. Nichols*, 252 Ariz. 519, 522 ¶ 8 (App. 2022) (although Mother is *pro se*, we "hold unrepresented litigants in Arizona to the same standards as attorneys and do not afford them special leniency").

**¶16**　　　　Nonetheless, we have reviewed the record, including the termination trial transcripts and the juvenile court's termination order, and conclude it contains sufficient evidence supporting the juvenile court's factual findings and its decision to terminate Mother's parental rights. *See Brionna J.*, 255 Ariz. at ___ ¶ 30–31; *Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 342 (App. 1984) (recognizing "courts prefer to decide each case upon its merits rather than to dismiss summarily on procedural grounds").

**¶17**　　　　Under § 8-533(B)(3), DCS had to prove by clear and convincing evidence that Mother could not "discharge parental responsibilities because of mental illness . . . and that there [were] reasonable grounds to believe that the condition will continue for a prolonged, indeterminate period." In making its determination, the court relied on Mother's mental health diagnoses, Mother's criminal history, Mother's claim that DCS kidnapped Child, and Mother's denial that she has mental health issues or needs treatment. The record supports the court's conclusion that DCS satisfied § 8-533(B)(3).

**¶18**　　　　The record also supports the court's best-interests finding. The court found termination would provide Child with safety, stability, and permanency. It also found that termination would prevent Child from further abuse and neglect. The record adequately supports both findings.

**¶19**　　　　In light of the juvenile court's "thorough findings of fact and sustainable conclusions of law with respect to both the statutory grounds for [termination] and the child[]'s best interests," we affirm termination under § 8-533(B)(3). *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282–83 ¶ 16 (App. 2022) (citation omitted). Because we have found that the record adequately supports one ground for termination, we need not address the other grounds the juvenile court found. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376 ¶ 14 (App. 2010).

**CONCLUSION**

¶20    We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    TM