NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO D.J.

No. 1 CA-JV 25-0087

FILED 02-02-2026

Appeal from the Superior Court in Navajo County
No. S0900JD202000037
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

Charles J., Clarksville, AR
*Appellant*

Booth Law Firm, PLLC, Chandler
By Jennifer Booth
*Advisory Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

Belt Law Firm PLC, Scottsdale
By John C. Belt
*Counsel for Appellee Child*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

_____

**C A T L E T T**, Judge:

¶1        Charles J. ("Father") appeals an order terminating his parental rights as to D.J. ("Child"). Counsel for Father notified us that, after reviewing the record, she found no non-frivolous issues to raise. Father filed a *pro se* brief. Because the record supports the juvenile court's termination order, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Child was born in March 2016, while Father was incarcerated for a drug-related probation violation. At birth, Child was immediately placed in foster care with her current placement, her godparents, with whom she spent the first few months of life. Child then lived with both her biological parents for several years.

¶3        In December 2020, the Arizona Department of Child Safety ("the Department") took custody of Child on an emergency basis. The Department received reports Child was being neglected, and when it took custody, she had matted hair and lice. The Department also learned that Father had exposed Child to domestic abuse in the home and that both parents used drugs.

¶4        Three days after taking custody, the Department petitioned for dependency. Because the parties previously resided in Arkansas, the Arizona juvenile court held a hearing under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). The court found that the Division of Family Services of Arkansas had previously opened an investigation, but no other state court had issued orders and "due to the parties['] relocation and the parties['] location at the time of removal," Arizona had jurisdiction. Father did not object. In April 2021, the court found Child dependent as to Father because he exposed Child to domestic abuse in the home and abused substances.

¶5        Since December 2020, Child has been in an out-of-home placement. In December 2024, the Department moved to terminate Father's parental rights. It alleged Father chronically abused drugs and there were reasonable grounds to believe the condition would continue for a prolonged period. *See* A.R.S. § 8-533(B)(3). The Department also alleged Child had been in an out-of-home placement for more than fifteen months and there was a substantial likelihood Father was incapable of exercising parental care and control in the near future. *See* A.R.S. § 8-533(B)(8).

¶6        At the termination hearing, the Department's case manager testified that Child entered custody in December 2020 because of domestic violence and substance abuse within the home. He testified about a police report from an April 2023 arrest, in which Father identified himself to officers as a meth user. He further testified that, during a team decision making meeting between Father and the Department, Father acknowledged using methamphetamine. He stated that Father had not provided drug test results to the Department since his 2023 arrest. The case manager detailed substance abuse services the Department offered to Father, and Father's failure to participate. The case manager acknowledged Father engaged in services in 2021 but the subsequent drug-arrest and lack of treatment or drug testing left him unconvinced of Father's sobriety.

¶7        The case manager testified that Child's fear of Father, and Father's substance abuse and criminal involvement prevented Child from returning to Father. He did not think Father had remedied those circumstances. He detailed reunification services offered to Father such as phone contact with Child, parenting and anger management classes, and other counseling, but stated that Father had not engaged in those services since 2021. The case manager explained that Father had an outstanding warrant which would be a barrier to reunification because it would cause instability and uncertainty for Child, and that Father had a separate 2023 drug charge pending. Finally, he opined that Father would be unable to exercise proper and effective parental control in the near future.

¶8        Child's therapist testified that, based on her work with Child, reunification with Father would be difficult. She testified that Child desired permanence with her current placement. Specifically, Child desired adoption, did not want to resume contact with Father, and was doing much better in school and emotionally.

¶9        Child's godmother and current placement testified that she and her husband first met Child when she was a newborn after they picked her up at the hospital and served as her foster parents for several months.

She testified that her family maintained a relationship with Child even after Child returned to her parents in late 2016. She testified that, after Child returned to her godparents, Child had phone calls with Father, but those calls distressed Child. Starting in mid-November 2023, Child expressed a desire not to speak with Father at all. Father, since then, has not consistently attempted to contact Child.

¶10 Godmother also testified that Child has had emotional problems, especially related to phone calls with Father and court dates, but that she has improved greatly since being placed with her godparents. She testified that she and her husband want to adopt Child.

¶11 Child's attorney informed the court that he spoke with Child and explained the implications of termination and adoption. He stated that Child supports termination and wishes to be adopted by her godparents.

¶12 Father claimed he did not receive much communication from the Department, but that he completed two parenting classes, an anger management class, and drug counseling. He admitted to pleading guilty to a 2023 drug charge and currently being on probation, as well as having an outstanding warrant in Michigan, requiring him to serve 35 days in jail. He claimed he attempted to turn himself in "for a period of six months," but due to Covid, the jail would not take him. He further testified that, because the Michigan warrant is non-extraditable, there is no risk of arrest in Arkansas where he lives. He admitted he knew that clearing the warrant was a pre-condition to Child returning to him.

¶13 Father testified he did not currently have a substance abuse problem and that he had changed for the better since Child was taken into custody. Father said that, through counseling, anger management classes, and Bible study, he had learned a lot, including about how to cope with his emotions. He testified he had only used methamphetamine "a few times in [his] life." He blamed his 2023 methamphetamine possession charge on a family member.

¶14 When asked why it would be in Child's best interests to live with him, Father focused on his parental rights, claiming they had been "robbed" from him. He admitted that Child's current placement is good for her. Father denied responsibility for Child being out of his custody.

¶15 The juvenile court found the Department failed to meet its burden to show termination was justified based on Father's prolonged drug use. *See* A.R.S. § 8-533(B)(3). The court did however find that the Department met its burden on the out-of-home placement ground for

termination.  *See* A.R.S. § 8-533(B)(8)(c).  The court found that Child had "been in out of home placement by order [since around] December 16, 2020" which "exceeds fifteen months contemplated by statute."  Father's failure to address the Michigan warrant, his continued history of drug use after losing custody of Child, and his failure to remain law-abiding showed an inability to remedy the circumstances causing the out-of-home placement.  Given his substance abuse, criminal history, and lack of progress with offered services during the preceding four years, the court found it substantially likely that Father would not be able to "exercise proper and effective parental care and control in the near future."  It based these findings on the multiple services offered to Father and his lack of meaningful engagement with them.

**¶16**        As to best interests, the court found "that there is a plan for adoption," and Child's "current placement is providing [her] with a loving and nurturing home environment, and she is thriving in their care."  The court also recounted the therapist's opinion that a lack of finality was having negative psychological effects on Child.  The court found the Department proved it would be in Child's best interests for Father's parental rights to be terminated.

**¶17**        Father timely appealed; we have jurisdiction.  A.R.S. §§ 12-120.21(A)(1), 8-235(A).

## DISCUSSION

**¶18**        Father argues the juvenile court erred in terminating his parental rights.  But Father's *pro se* brief does not comply with our rules.  Father does not, among other defects, adequately explain his argument or cite to the record and legal authority.  *See* Ariz. R. Civ. App. 13(a)(7); Ariz. R.P. Juv. Ct. 607(b).  Father has therefore waived any argument challenging the termination of his parental rights.  *See In re Aubuchon*, 233 Ariz. 62, 64–65 ¶ 6 (2013); *see also Ramos v. Nichols*, 252 Ariz. 519, 522 ¶ 8 (App. 2022).

**¶19**        Still, we have reviewed the full record and conclude it adequately supports the juvenile court's factual findings, conclusions of law, and its ultimate decision to terminate Father's parental rights.  *See Brionna J. v. Dep't of Child Safety*, 255 Ariz 471, 478–79 ¶¶ 30–31 (2023); *Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 342 (App. 1984) (recognizing merits decisions are preferred over dismissal on procedural grounds).

**¶20**        To terminate parental rights, the juvenile court must find, by clear and convincing evidence, that at least one statutory ground for termination exists and, by a preponderance of the evidence, that

termination would be in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 22 (2005). This court affirms termination "unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022). We affirm the juvenile court's legal conclusions about the statutory ground for termination "unless they are clearly erroneous." *Brionna J.*, 255 Ariz. at 478–79 ¶ 31.

**¶21** The court found the Department proved the fifteen-month out-of-home placement ground for termination. *See* A.R.S. § 8-533(B)(8)(c). The record supports that finding. Child had been in an out-of-home placement since December 16, 2020, well exceeding the required fifteen months. The Department made diligent efforts in providing reunification services, but Father had neither substantially completed them nor remained in consistent contact with the Department. Father had persistently failed to provide drug test results. Father had not addressed an outstanding warrant and continued to engage in criminal activity and drug use, which most recently resulted in a 2024 conviction for possession of methamphetamine. This evidence supports the court's finding that Father would not soon remedy the circumstances causing the out-of-home placement.

**¶22** The record also supports the court's best interests finding. Child's current placement is providing a stable home environment where Child has improved emotionally. Child's therapist predicted that reunification with Father would be difficult for Child, and Child's attorney explained that Child supports termination and wishes to be adopted by her current placement. Child's current placement plans to adopt her. This evidence demonstrates that termination was in Child's best interests. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 12 (2016).

**¶23** Considering the juvenile court's "thorough findings of fact and sustainable conclusions of law," we affirm. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 16 (App. 2022).

**CONCLUSION**

**¶24** We affirm.

