# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 23

*October Term, A.D. 2014*

**February 19, 2015**

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

EDWARD P. MORIARITY, WSB
#4-1163,

Respondent.

D-15-0001

## ORDER OF PUBLIC CENSURE

[¶1]    **This matter** came before the Court upon a "Report and Recommendation for Public Censure," filed herein January 14, 2015, by the Board of Professional Responsibility for the Wyoming State Bar.  The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation, and the file, finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court, and that Respondent, Edward P. Moriarity, should be publicly censured for his conduct. It is, therefore,

[¶2]    **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]    **ADJUDGED AND ORDERED** that Edward P. Moriarity is hereby publicly censured for his conduct, which is described in the Report and Recommendation for Public Censure; and it is further

[¶4]    **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Mr. Moriarity shall reimburse the Wyoming State Bar the amount of $50.00, representing the costs incurred in handling this matter, as well as pay the administrative fee of $500.00.  Mr. Moriarity shall pay the total amount of $550.00 to the Wyoming State Bar on or before April 1, 2015; and it is further

[¶5]    **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

[¶6]    **ORDERED** that, pursuant to Section 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶7]    **ORDERED** that the Clerk of this Court cause a copy of this Order of Public Censure to be served upon Respondent, Edward P. Moriarity.

[¶8]    **DATED** this 19th day of February, 2015.

**BY THE COURT:***

/s/

**E. JAMES BURKE**
**Chief Justice**

*Justice Kite took no part in the consideration of this matter.

D-15-0001

## BEFORE THE SUPREME COURT

### STATE OF WYOMING

IN THE SUPREME COURT
STATE OF WYOMING
FILED

JAN 1 4 2015

CAROL THOMPSON, CLERK
by DEPUTY

| | | |
|---|---|---|
| *In the matter of* | ) | |
| *EDWARD P. MORIARITY,* | ) | |
| *WSB No. 4-1163* | ) | *BPR No. 2014-131* |
| | ) | |
| *Respondent.* | ) | |

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

THIS MATTER came before the Board of Professional Responsibility on the 13th day of January, 2015, for consideration of the recommendation of Bar Counsel that the Board file a report and recommendation for a public censure of Respondent. Bar Counsel's recommendation was made pursuant to Section 20 of the Disciplinary Code for the Wyoming State Bar as a result of Bar Counsel's investigation of Respondent's Arizona disciplinary proceeding, in which Respondent consented to disbarment in Arizona.

Upon receipt of Bar Counsel's recommendation for a public censure, the Board issued an order to Respondent to file a written response to Bar Counsel's recommendation, showing cause, if any exists, as to why the recommendation of Bar Counsel should not be adopted by the Board. Respondent filed a timely response, consenting to the recommendation for public censure.

For the reasons that follow, a quorum of the Board unanimously recommends that an order of public censure be issued in this matter.

## FACTS

Overview. Respondent was admitted to the Wyoming State Bar in 1970. He is also licensed to practice in Montana, Utah and Arizona. The events that give rise to this recommendation occurred in Arizona, and resulted from Respondent's representation of Lisa M. Aubuchon, a former deputy Maricopa County attorney who was disbarred in 2013 for numerous ethical viola-

tions relating to abuse of her position. Respondent represented Aubuchon in her disbarment proceedings, and also filed a lawsuit on her behalf in the Superior Court of Maricopa County, *Aubuchon, et al. v. Brock, et al. (Aubuchon)*[1] Among the defendants named in *Aubuchon* were Phoenix attorneys, Edward Novak and Thomas Irvine, as well as their law firm, Polsinelli Shughart P.C. (collectively, the "Polsinelli Defendants").

After the claims asserted against the Polsinelli Defendants were dismissed with prejudice as lacking any factual or legal basis—and after Aubuchon's disbarment—disciplinary proceedings were brought against Respondent by Arizona bar counsel, alleging that Respondent had filed and maintained *Aubuchon* in bad faith; that Respondent acted improperly in allowing Aubuchon to sign the *Aubuchon* complaint on Respondent's behalf; and that Respondent lied when he told Arizona Bar Counsel that he was representing Aubuchon on a *pro bono* basis when in fact he had a contingent fee agreement in the case. Respondent decided not to contest the disciplinary proceedings and signed a Consent to Disbarment which was quickly followed by a Final Judgment of Disbarment. This investigation followed.

*Aubuchon v. Brock.* *Aubuchon*, the lawsuit filed by Respondent in 2011 while he was representing Aubuchon in her disbarment proceeding, was largely a reprise of a lawsuit filed by Aubuchon in 2009 while she was a deputy district attorney in the Maricopa County Attorney's Office ("MCAO"). The earlier lawsuit, *Arpaio, et al. v. Maricopa County Board of Supervisors, et al.* (the "RICO Action"), was filed by Aubuchon on behalf of the Maricopa County Sheriff, Joseph M. Arpaio, and the Maricopa County Attorney, Andrew Thomas, against the Board of Supervisors, its members, four Maricopa County Superior Court judges, the Polsinelli Defend-

---

[1] Respondent represented Aubuchon in her disciplinary proceeding on a *pro bono* basis. Respondent's representation of Aubuchon in the *Aubuchon* lawsuit was pursuant to a written con-

2

ants and others. In the RICO Action, Aubuchon alleged that the defendants committed bribery and extortion as part of a conspiracy "to hinder the investigation and prosecution of elected officials, county employees, and their attorneys concerning the funding and construction of a court tower in Maricopa County" (the so-called "Court Tower Conspiracy"). The RICO Action and its underlying controversies received national press coverage.

Shortly after the RICO Action was filed, the Maricopa County Attorney, Andrew Thomas, reassigned the case from Aubuchon to a different MCAO deputy, Rachel R. Alexander. Three months later, the plaintiffs voluntarily dismissed the RICO Action in March 2010. Aubuchon's filing of the RICO Action was part of the basis for a disciplinary proceeding initiated by Arizona bar counsel against Thomas, Aubuchon and Alexander in February 2011, in which Aubuchon was represented by Respondent.

While Aubuchon's disciplinary case was pending, Respondent filed *Aubuchon* in August 2011, naming as plaintiffs Aubuchon, Aubuchon's husband, and David Hendershott and Anna Hendershott, husband and wife. David Hendershott was second in command in the Maricopa County Sheriff's Office. The new case essentially re-pled the Court Tower Conspiracy with the same defendants as the RICO Action (including Polsinelli Defendants Edward Novak, Thomas Irvine and their law firm), except that the Superior Court judges were omitted and several MCAO staff members were added as defendants.

Aubuchon's disciplinary hearing commenced in September 2011 and concluded in December of that year. The case had generated so much notoriety that the hearing was televised. The Arizona hearing panel issued its findings in February 2012. The panel found with respect to the RICO Action, "The allegation that there was a conspiracy driving the Court Tower Project

tingent fee agreement.

was factually impossible." The hearing panel found that Aubuchon prejudiced the interests of justice in violation of Rule 8.4(d) by filing the RICO Action against judges who were absolutely immune from a civil damages lawsuit based upon their judicial acts. According to the Arizona hearing panel, Aubuchon "pursued the RICO Action to retaliate against the named judges and to intimidate the judges of the Superior Court." *In re Aubuchon*, 309 P.3d 886, 894 (Ariz. 2013). This ethical transgression along with others led to Aubuchon's disbarment per order of the Arizona Supreme Court in October 2013. *Id.*

The Arizona disciplinary proceedings against Respondent. In May 2012, three months after the hearing panel issued its findings in Aubuchon's disciplinary case, Maricopa County Superior Court Judge Sally Duncan issued a minute order in *Aubuchon* dismissing the claims that had been asserted against the Polsinelli Defendants. The order stated, "No legal or factual basis ever existed to file a Complaint against [the Polsinelli Defendants] and THE COURT FURTHER FINDS the Complaint was filed for vexatious purposes." The order directed the Polsinelli Defendants to file a motion for attorneys' fees.

Later that month, on May 31, 2012, the Polsinelli Defendants (Edward Novak, Thomas Irvine and Polsinelli Shughart managing shareholder, Marty Harper) filed a complaint with the Arizona State Bar against Respondent, submitting Judge Duncan's minute order along with other documents from *Aubuchon* in support of the complaint. Five months later, on November 5, 2012, Arizona bar counsel gave Respondent written notice that Respondent was under investigation and apprised Respondent of the nature of the allegations. Respondent responded on January 11, 2013, through counsel, denying misconduct and submitting more than 1,600 pages of accompanying documents. In the meantime, on November 12, 2012, Judge Duncan awarded the Polsi-

4

nelli Defendants $185,126.50 in attorneys' fees and $1,437.50 in costs, jointly and severally, against the *Aubuchon* plaintiffs, Respondent, and Respondent's law firm.[2]

Nothing further was done in the disciplinary investigation of Respondent until September 2013, when Arizona bar counsel wrote to Respondent with additional questions and follow up document requests. Though Respondent produced "more than 6,000 electronic files' worth" of additional documents, Arizona bar counsel concluded, "None of the information submitted established any reason to doubt the accuracy of Judge Duncan's May 8, 2012 findings that Plaintiffs' claims against the Polsinelli Defendants lacked any legal or factual basis and were asserted for vexatious purposes."

On January 29, 2014, the Attorney Discipline Probable Cause Committee of the Arizona Supreme Court issued a Probable Cause Order authorizing the filing of a disciplinary complaint against Respondent. Six weeks later, on March 14, 2014, the formal disciplinary complaint was filed. On April 3, 2014, Respondent filed an answer generally denying all allegations of misconduct on his part. A court-ordered settlement conference, with a former Superior Court judge serving as mediator/settlement officer, was held in late June 2014 and resulted in an agreement that Respondent would consent to disbarment in Arizona rather than proceed to a disciplinary hearing. On July 10, 2014, Respondent signed a "Consent to Disbarment" which stated:

> I, Edward P. Moriarity, residing at 973 St. Andrews Drive, Bozeman, Montana 59715, voluntarily consent to disbarment as a member of the State Bar of Arizona and consent to the removal of my name from the roster of those permitted to practice before this court, and from the roster of the State Bar of Arizona.
>
> I acknowledge that a formal complaint has been filed against me. I have read the complaint, and the charges made against me. I further acknowledge that I do not desire to contest or defend the charges, but wish to consent to disbarment. I have been advised of

---

[2] Judge Duncan's award of attorneys' fees and costs is presently under appeal.

and have had an opportunity to exercise my right to be represented in this matter by a lawyer. I consent to disbarment freely and voluntarily and not under coercion or intimidation. I am aware of the rules of the Supreme Court with respect to discipline, disability, resignation and reinstatement, and I understand that any future application by me for admission or reinstatement as a member of the State Bar of Arizona will be treated as an application by a member who has been disbarred for professional misconduct, as set forth in the complaint filed against me.

On July 15, 2014, Acting Presiding Disciplinary Judge, Sandra E. Hunter, signed a Final Judgment of Disbarment terminating Respondent's membership in the Arizona State Bar.

On July 21, 2014, Bar Counsel for the Wyoming State Bar received an email from Maret Vessella, Chief Bar Counsel for the Arizona State Bar, to which were attached copies of Respondent's Consent to Disbarment and the Final Order of Disbarment. Bar Counsel immediately inquired whether Respondent was willing to consent to an order of disbarment in Wyoming as well. Respondent promptly responded to Bar Counsel, "It is my intent to fight the disbarment in Wyoming where I believe I can get a fair hearing." Respondent also notified the state bars of Montana and Utah of his Arizona disbarment, as well as the federal district and circuit courts of appeal in those jurisdictions. Bar Counsel thereupon opened an investigation and began assembling documents from Respondent's disciplinary proceeding in Arizona.

On September 24, 2014, Respondent filed a motion for relief from the Final Judgment of Disbarment in Arizona pursuant to Rule 60(c)(6) of the Arizona Rules of Civil Procedure which, like Wyoming's comparable rule, allows for relief from a judgment or order for "any other reason justifying relief . . ." The motion was supported by Respondent's detailed declaration, under penalty of perjury, setting forth the circumstances behind his decision to consent to disbarment, including most significantly Respondent's reliance upon assurances that the consent to disbarment was not an admission of wrongdoing and would therefore not result in reciprocal

6

discipline in the other jurisdictions in which Respondent was licensed. Respondent's motion and supporting materials pointed out that when he consented to disbarment, Respondent was in extreme mental and emotional turmoil, compounded by the fact that his wife was battling a recurrence of breast cancer. Citing relevant case law, Respondent argued that the sanction of disbarment was disproportionate to the misconduct with which Respondent was charged. Respondent pleaded for the opportunity to defend the disciplinary complaint on the merits.

Meanwhile, upon receipt of Respondent's notification of the Arizona disbarment, the Honorable Nancy D. Freudenthal, Chief United States District Judge for the District of Wyoming, issued a notice directing Respondent to show cause why reciprocal discipline should not be imposed in Wyoming's federal court. Upon consideration of Respondent's response, which included an explanation of his efforts to obtain relief from the Arizona disbarment, Judge Freudenthal issued an order dated October 1, 2014, with a finding that "further discipline by this Court is not necessary at this time. The Court will dismiss the case pending the outcome of any investigation by the Wyoming State Bar. If the Wyoming State Bar decides to take action, then this Court will consider taking action based on those findings, not the determinations of the Arizona State Bar."

On October 8, 2014, Arizona bar counsel filed a lengthy opposition to Respondent's motion for relief from the Final Order of Disbarment with numerous exhibits. In essence, Arizona bar counsel argued that Respondent had not made a sufficient showing justifying Rule 60 relief, and that (despite the recommendation of a six-month suspension in bar counsel's December 12, 2013 report of investigation) the misconduct with which Respondent was charged clearly warranted disbarment.

Respondent filed a response to Arizona bar counsel's opposition on October 22, 2014, in which Respondent reiterated that his mistaken belief as to the effect of his Arizona disbarment upon his licenses in other jurisdictions was understandable in part because of an email from the settlement officer, a retired Superior Court judge, stating, "There is a possibility that the other disciplinary agencies may not choose to investigate or prosecute you for your conduct in Arizona. You would have the opportunity to defend yourself on the merits or otherwise with the other jurisdictions." Respondent's reply went on:

> Respondent's motion is not, however, limited to his misunderstanding of the legal effect of the Consent to Disbarment. Other factors contributed to the outcome which compounded its unjustness. Thus, Respondent's decision to consent to disbarment, rather than fight it, was driven in large measure by his wife's illness. He was distraught about his wife's condition, so he was not thinking clearly to begin with. Respondent sought to put the fight behind him to shield his wife from the strain of the fight. Nevertheless, Respondent's ill wife would never have wanted her illness to cause Respondent to lose his ability to practice law in his home state (Montana) or the neighboring state where he began his long practice career (Wyoming). The fight was worth the cost if the alternative was Respondent's permanent exclusion from the profession he loves.

On November 26, 2014, the Honorable Dana L. Christensen, Chief United States District Judge for the District of Montana, after reviewing Respondent's notification of the Arizona disbarment, issued an order declining "to impose any discipline at this time. However, if the Montana Supreme Court decides to levy discipline, this Court will revisit the matter at that time." In his order, Judge Christensen discussed "substantial reasons not to order identical discipline" of Respondent:

> First, discipline imposed by the Arizona Supreme Court pursuant to the settlement agreement was grossly disproportionate to Moriarity's alleged misconduct. For example, in *Matter of Levine*, 847 P.2d 1093 (Ariz. 1993), the Arizona Supreme Court suspended an attorney for six months after the attorney was found to

8

have filed multiple frivolous actions over the course of several years. In contrast, Moriarity is accused of filing only one frivolous lawsuit.

Further, the *Levine* court conducted a brief survey of similar cases from other jurisdictions which reveals that disbarment is inappropriate in this case. The *Levine* court examined three different disciplinary cases where attorneys were suspended for filing frivolous lawsuits. In a Colorado case, an attorney was suspended for three years for filing multiple frivolous claims, in addition to being "found in contempt of court, fail[ing] to surrender himself to the sheriff, and abus[ing] the judicial process in an effort to avoid child support payments. *Id.* at 1122 (citing *People v. Kane*, 655 P.2d 390 (Colo. 1982)). In a case from the Northern District of Illinois, an attorney was suspended for two years after filing fifteen separate lawsuits which were found to be frivolous, defamatory, and vituperative. *Levine*, 847 P.2d at 1122 (citing *In re Sarelas*, 360 F.Supp. 794 (N.D.Ill. 1973), aff'd, 497 F.2d 926 (7th Cir. 1974). Finally, the *Levine* court examined a Montana case where an attorney was suspended for three months after filing multiple claims, as well as disobeying a court order, threatening a public official, and violating the conflict of interest rules. *Levine*, 847 P.2d at 1122 (citing *In re Belue*, 766 P.2d 206 (1988)). When the conduct of the attorneys in the above cases is compared against Moriarity's alleged conduct, it is clear that disbarment is not only inappropriate in this case, but also vastly disproportionate to the discipline that would have likely been imposed had Moriarity contested the Arizona complaint. Therefore, reciprocal discipline, in the form of disbarment, in not appropriate in this case.

Additional substantial reasons counsel against imposing reciprocal discipline. Moriarity is no stranger to this Court. Moriarity has practiced law tirelessly for over 43 years and this is the first disciplinary complaint that has ever been brought against him. Moriarity's legal career has demonstrated exemplary service to the public and the bar. Moriarity is a hardworking, tenacious, and effective advocate for his clients, and the Court believes that Moriarity's actions [sic] Arizona, even if true, are not representative of his exceptional legal career. Finally, Moriarity declined to contest the merits of the Arizona complaint under the erroneous belief that accepting the settlement agreement would not lead to reciprocal discipline in other jurisdictions. That belief was obviously misplaced, and as explained above, Moriarity is now seeking to vacate the Arizona discipline. In any event, because the Arizona proceeding never reached the merits, the discipline imposed upon

9

Moriarity does not represent the measured judgment of the Arizona Office of the Disciplinary Judge.

In conclusion, the Court finds substantial reasons not [sic] impose reciprocal discipline of any kind in this case. However, attorneys who practice in this District are required to be in good standing with the State Bar of Montana. L.R. 83.1(b). In the event the Montana Supreme Court elects to impose some form of discipline, this Court will reexamine the matter based upon the Montana Supreme Court's decision.

IT IS ORDERED that reciprocal discipline will not be imposed upon Respondent Edward P. Moriarity. However, if the Montana Supreme Court elects to impose discipline upon Moriarity, this Court will revisit the matter at that time.

On December 10, 2014, the Acting Presiding Discipline Judge in Respondent's Arizona disciplinary case issued an order denying Respondent's motion for relief from the Final Judgment of Disbarment. The disciplinary judge found that Respondent did not meet his burden of showing "extraordinary circumstances" justifying relief from the Final Judgment of Disbarment. Having so found, the disciplinary judge did not get to the issue of whether Respondent had a substantial defense to the underlying disciplinary charge. The disciplinary judge stated, "[I]t is now Moriarity's burden to make his case to those other jurisdictions under their rules and disciplinary proceedings." Respondent has appealed the disciplinary judge's decision to the Arizona Supreme Court.

Wyoming's reciprocal discipline rule. Section 20 of the Disciplinary Code for the Wyoming State Bar deals with reciprocal discipline and provides:

(a) Upon notification that an attorney admitted to practice in this state has been disciplined in another jurisdiction, Bar Counsel shall investigate and make a recommendation to the BPR as to whether it should recommend to the Court that it enter an order imposing the identical discipline or take some other action. Bar Counsel's recommendation shall be served upon such attorney.

(b) Upon receipt of Bar Counsel's recommendation, the BPR shall issue an order requiring such attorney to show cause as to why the recommendation of Bar Counsel should

10

not be adopted by the BPR. Any show cause hearing shall be conducted in accordance with Section 19. Such attorney shall have the burden of proof by a preponderance of the evidence. A copy of the report to the Court shall be served on Bar Counsel, such attorney, and any counsel who represented such attorney in the proceedings.

(c) The procedure for a response to the report from respondent and the procedure thereafter shall be pursuant to Section 21(f). The Court shall then issue an order imposing the identical discipline or some other disposition.

(d) Except as otherwise stated above, a final adjudication in another jurisdiction that an attorney has been guilty of misconduct shall establish that misconduct conclusively for purposes of any disciplinary proceeding in this state.

<u>Bar Counsel's Investigation and Recommendation</u>

In the course of his investigation, Bar Counsel reviewed a large volume of documentation relating to the Aubuchon disbarment proceeding, in which Respondent represented Aubuchon. Aubuchon's hearing was consolidated with companion cases against two other MCAO attorneys, Maricopa County Attorney Andrew Thomas and his deputy, Rachel R. Alexander. All three disciplinary charges stemmed from the attorneys' involvement in the RICO action: Thomas as a named plaintiff; Aubuchon as the MCAO attorney who filed the case; and Alexander as the MCAO attorney who was assigned the case a few days after it was filed, when Thomas took Aubuchon off the case due to a perceived conflict of interest. Alexander voluntarily dismissed the RICO Action three months after it was assigned to her. Thereafter, disciplinary complaints were filed charging Thomas, Aubuchon and Alexander with multiple rules violations. Following the disciplinary hearing, the hearing panel ordered both Thomas and Aubuchon disbarred. Thomas did not appeal his disbarment. Aubuchon did, as reported above, and the Arizona Supreme Court upheld the disbarment.

With respect to Alexander, the hearing panel found violations of Rules 1.1 (competence); 1.7(a)(1) and (2) (concurrent conflict of interest); 3.1 (lack of meritorious basis); 3.4(c) (failure

11

to follow the rules of the tribunal); 4.4(a) (use of litigation to embarrass, delay, or burden); and 8.4(d) (conduct prejudicial to the administration of justice) and ordered a suspension of six months and one day. On appeal, the Arizona Supreme Court reversed the findings of violations of Rules 1.7(a)(2), 3.4(c) and 4.4(a), and reduced Alexander's suspension to six months. *In re Alexander*, 300 P.3d 536 (Ariz. 2013).

The Arizona disciplinary charge against Respondent consisted of three claims:

1.    Respondent violated Rules 3.1, 3.3, 4.4 and 8.4 when he filed *Aubuchon* without a basis in fact or law.

2.    Respondent violated Rules 1.2(d), 3.4, 5.1(b) and 8.4 when he caused Aubuchon to sign the *Aubuchon* complaint and amended complaint on his behalf.

3.    Respondent failed to cooperate with and misled Arizona bar counsel in violation of Rules 4.1, 8.1 and 8.4.

In Bar Counsel's opinion, Arizona bar counsel overcharged Respondent. Having reviewed a substantial volume of documents generated in the course of Arizona bar counsel's investigation of Respondent, Bar Counsel came to the conclusion that the second and third items should not have been charged for the following reasons: When Respondent authorized Aubuchon to sign the *Aubuchon* complaint and amended complaint, Respondent was doing something that is routinely done in Wyoming. At the time she signed those pleadings, Aubuchon was a licensed member of the Arizona State Bar in good standing. It is hard to imagine that a fair-minded hearing panel would have found Respondent to have acted unethically in authorizing Aubuchon to sign pleadings in Respondent's absence. Similarly, the thrust of the third charge—that Respondent misled Arizona bar counsel by characterizing his representation of Aubuchon as *pro bono* when he had a contingent fee agreement—would have been easily defended. Respond-

12

ent had a written contingent fee agreement for the *Aubuchon* action. His defense of Aubuchon in the disciplinary proceeding, on the other hand, was purely *pro bono*.

In the opinion of Bar Counsel, the sole disciplinary charge that was warranted in Respondent's case is that he violated Rule 3.1 with respect to the *Aubuchon v. Brock* claims against the Polsinelli Defendants. Thus, Bar Counsel's recommendation that Respondent receive a public censure was premised on the assumption that a Rule 3.1 violation – and only a Rule 3.1 violation – could be proven by clear and convincing evidence.

As discussed in the above-quoted order entered by Judge Christensen in Montana, it is unlikely that a Rule 3.1 violation would have drawn a suspension under Arizona law. Under Wyoming law as reflected in this Court's recent holding in *Bd. of Prof. Resp. v. Stinson*, 337 P.3d 401 (Wyo. 2014), a public censure is clearly the appropriate sanction.

In *Stinson*, this Board found that Stinson committed a negligent violation of Rule 3.1 in filing a meritless counterclaim and recommended a public censure as the appropriate sanction. On appeal, Special Bar Counsel urged that Stinson should be suspended. In rejecting that argument and ordering a public censure, the Court discussed the application of the American Bar Association's Standards for Imposing Lawyer Discipline ("ABA Standards) to a Rule 3.1 violation. The Court began with ABA Standard 3.0, which lists the four factors to be considered in imposing a sanction after a finding of lawyer misconduct:

(a)     the duty violated;
(b)     the lawyer's mental state;
(c)     the potential or actual injury caused by the lawyer's misconduct; and
(d)     the existence of aggravating or mitigating factors.

*Stinson*, 337 P.3d at 420.

13

The Court proceeded to discuss the first factor, the duty violated, and observed that a violation of Rule 3.1 falls within ABA Standard 6.2, "Abuse of the Legal Process":

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists:
>
> 6.21  Disbarment is generally appropriate when a lawyer knowingly violates a court order or a rule with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.
>
> 6.22  Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.
>
> 6.23  Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.
>
> 6.24  Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.

*Id.*

In considering the second factor, the lawyer's mental state, the Court quoted from the preamble to the ABA Standards:

> The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the

14

nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

*Id.* at 420-21.

The Court next considered the third factor, the potential or actual injury caused by the lawyer's misconduct, and quoted the definition of "injury" under the ABA Standards:

> Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

*Id.*

Finally, the Court quoted ABA Standard 9.0, entitled "Aggravation and Mitigation":

9.1    *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2    *Aggravation*

    9.21    *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

    9.22    *Factors which may be considered in aggravation.* Aggravating factors include:

        (a) prior disciplinary offenses;
        (b) dishonest or selfish motive;
        (c) a pattern of misconduct;
        (d) multiple offenses;

15

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of the victim;

(i) substantial experience in the practice of law;

(j) indifference in making restitution; and

(k) illegal conduct, including that involving the use of controlled substances.

## 9.3    *Mitigation*

9.31      *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32      *Factors which may be considered in mitigation.* Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses

## 9.4     *Factors Which Are Neither Aggravating nor Mitigating*

The following factors should not be considered as either aggravating nor mitigating:

> (a) forced or compelled restitution;
> (b) agreeing to the client's demand for certain improper behavior or result;
> (c) withdrawal of complaint against the lawyer;
> (d) resignation prior to completion of disciplinary proceedings;
> (e) complainant's recommendation as to sanction; and
> (f) failure of injured client to complain.

*Id.* at 421-22.

In recommending a public censure of Stinson, this Board found two mitigating factors: (1) absence of a prior disciplinary record; and (2) good reputation as a competent attorney. *Id.* at 423. These same two factors apply to Respondent. Also with respect to Stinson, this Board found two aggravating factors: (1) Stinson's substantial experience in the practice of law; and (2) his refusal to acknowledge the wrongful nature of his conduct. *Id.* at 424. Again, these same two factors apply to Respondent, who remains steadfast in his insistence that he committed no ethical misconduct in his representation of Aubuchon.

In *Stinson*, the Court concluded, "Having considered all four factors – the duty violated, Mr. Stinson's mental state, the harm caused by the violation, and the aggravating or mitigating circumstances – we agree with the Board that the appropriate sanction for the violation is a public reprimand." *Id.*

Based upon Bar Counsel's investigation of Respondent's Arizona disciplinary proceeding, the Board agrees with Bar Counsel that the same analysis yields the same result and supports the same sanction. For the sake of consistency under Wyoming precedent as set forth in *Stinson*, the Board recommends a public censure of Respondent.

## CONCLUSION

For the reasons stated in this report and recommendation and based upon Bar Counsel's thorough review and well-reasoned conclusions, the Board recommends that the Court issue an order of public censure of Respondent, including an order that Respondent pay an administrative fee of $500.00 and costs of $50.00 to the Wyoming State Bar.

Dated January 14, 2015.

Jenifer E. Scoggin
Chair, Board of Professional Responsibility
Wyoming State Bar